Good morning, Justices. My name is Arthur Robinson, and I represent appellants in this case. And I appreciate the fact that the Court has allowed my clients to orally argue on this matter before you. And I hope under the de novo standard, this Court will take a fresh look at whether or not whether Shaw Fisher's leases were waived in this case according to some statutory language that the District Court agreed with the State Court on. Could you speak a little bit louder? Thank you. And thirdly, whether a particular section of the Limited Entry Act is unconstitutional in the fact that it denies due process. The State's position in this case has been that once the Alaska Supreme Court has made a ruling on its interpretation of a State statute, that that's the end of the story. That the State has preliminary power to determine what is and what isn't property. However, that's not the approach that the Supreme Court has taken, nor this Court has taken. Counsel, it seems to me that if you read all of the cases together, they suggest potentially that it's up to a State to determine what is property, but it's up to the Federal Court to determine whether there's been an infringement on the property right as defined by State law. And sometimes that's not an easy line to draw, but is that the correct overview? And if not, why not? Well, the Supreme Court of the United States says that such things as State law and the rules and common understandings also apply with that principle. In this case, however, we have demonstrated that after the passage of the single statement that says that this permit is a used privilege that can be revoked or modified by the legislature without compensation, the State enacted numerous laws, their own laws, State laws, that clearly give these permits property characteristics. It's sort of like the new property that the Court spoke about in Snyder when it was interpreting the Board of Regents versus Rupp. They elevated, apparently, this permit to the status of property by... But they were very specific as to what things you could do, which suggests then that it didn't have the status of property and that there were other things that you couldn't do with ordinary property. I assume that Alaska hasn't defined, for example, to what purposes ordinary real property can be put. They haven't defined under what circumstances banks can, for example, take out a mortgage or a second mortgage or a loan, use it as collateral against a loan for a business. But they have here, which suggests that you're a very, very heavily regulated form of property. Well, but this is not property. So I take it that it's not heavily regulated property under this theory of the State because it is a property. You probably have a property right for purposes of the Due Process Clause. That is, the State couldn't come in and sort of arbitrarily take away your lease or your permits without giving you some kind of due process. Correct. But the State has also said that even as you take these permits and these licenses, as you accept them, that you are going to be subject to whatever rules the State of Alaska needs to make from time to time in order to preserve its fisheries. And why all of a sudden does that get us into the Takings Clause? Because while I agree that the Constitution doesn't define what property is, there are some core notions of what property is. And those notions have always been recognized by federal courts. In the Little case, which was a case where the federal tax code didn't define what property was, but allowed the Internal Revenue Service to seize property in order to pay off the tax obligation, the way the Ninth Circuit resolved that case was they had to answer the question whether the person who had this redemption right for the company possessed property or property rights under Section 6321 involving the determination whether, under California law, the interest in question is an economic asset in the sense that it has pecuniary worth, is transferable, so that a claim can be made against it to enforce a claim. All of those apply to a limited entry permit. It's an economic asset in addition to a license to go fishing, as the state court said in the Brown case, that one of the reasons that a commercial fisherman has his license is that at the end of his career, he can sell it and get money to retire on, even. So it is an economic asset beyond its use for fishing. It can be inherited by the permit holder's family, wife, whoever else is in line for inheritance. It has pecuniary worth. There's a market for it, which the state created with these permits. You can sell them, otherwise transfer them, assign them, use them for collateral, for loans. But the state rules also say, counsel, that the state can enact whatever restrictions it needs to. And I'm trying to think through sort of the analogy here. Let me go back to Roth, which deals with sort of the tenure question, that if you have a professor at a university who has tenure, that you can't fire the professor without giving them some kind of due process rights. But if the state has severe budget cuts that have to be effectuated at the university, and the university decides to do away with the entire department, do you have a taking there as a professor to be able to say, wait a minute, this was a property right for purposes of the due process clause, but now it's a taking of my tenure if you've done away with my department? Well, you know, the Ninth Circuit in Snyder cited Roth not for the question of due process, but for the question of whether or not the interest made on money put into a fund for prisoners was their money, and if the state took it, whether it was a taking. It wasn't about due process. And they quoted Roth not for the purposes of due process, but for the purpose of whether or not if a state statute says one thing, does that end the discussion? If, in fact, there are other laws of the state that make this an economic asset in the sense that it has pecuniary worth, is transferable so that a claim may be enforced against it. The interest cases strike me in a sense as being cases in which the federal courts are saying, although they don't say it in these words, that everybody knows that the interest on the principal belongs to the owner of the principal, and so when the state is saying that it isn't property, what they're really doing is using that as an inaccurate shorthand for saying that it isn't a taking. And that piece, whether it's a taking, is a federal thing, not a state thing to decide. Well, that's what we're trying to decide here. But I don't think, I guess I'm struggling with whether the state's Supreme Court's analysis of whether there is a property right to begin with is binding on this Court as a matter of state law. Well, I would say that it's not binding on this Court as a matter of state law, because there are so many other state laws that seem to contradict that finding by the Supreme Court. I mean, are we to ignore all the other things? On a matter of state law, we ordinarily have to go by what the state Supreme Court says. In an ordinary case, a contract case or something like that, if there is a state Supreme Court decision and we're under Erie applying state law, we must apply the law as decided by the state's highest court. It doesn't matter whether we think it's a silly decision or a brilliant decision. It's a state law question, and we're bound by what the state Supreme Court says. And why wouldn't that obtain here? Well, because in Roth, apparently the Supreme Court says that the state interpretation of its own laws are not necessarily the end of the discussion. It's not clear enough. The question is, what's permissible under federal law in this case? What does the takings clause of federal law protect? To answer Judge Beebe's question about property, there are many items of property that are restricted for use. Merely because a piece of property or property interest has use restrictions on them doesn't necessarily take it out of the category of property. That would be the same thing with your house. We adopt some kind of a zoning restriction that prohibits what you can do with your own real property. Exactly. Does that mean we have a taking? Well, if it goes too far, according to Lucas, we do, because Lucas has said in confirming other Supreme Court cases. Why don't you tell us under Lucas what has gone too far here that takes this out of the realm of ordinary regulatory restrictions and makes it a taking? The diminutive value in the permits. Nobody's been prohibited from fishing. Yeah, but they have been prohibited in use of their permits. So partial use. That goes back to the analogy of the zoning restriction. Well, the Supreme Court has never limited a taking to total taking. I understand that. It's also limited taking to partial taking. Even for use, even for regulation. But we're not here to decide that question yet. What we're here to decide is whether or not these permits fall within the definition of property that entitles it to protection under the takings clause. Whether or not the regulations went too far, that's another question. We haven't gotten to that question because the state court and the district court have precluded these licenses from being considered property. So we have to first decide that question. And if you look at the whole gamut of state law, instead of this one sentence, it appears that state law treats these permits as if they're property. They are an economic asset. They clearly have pecuniary worth. They are transferable. A claim can be made against them. You know, you can claim against it for child support. You can claim against it if you default on a loan. The fact that it may fall into the realm of property that's not as extensive, let's say, as an automobile or shirt and tie that you wear doesn't necessarily preclude it from being property. The second issue, which I'd like to get to, and I don't agree that the federal court's continued de novo look at this issue is precluded by the state of Alaska's court. The judge in this case even said he was, you know, he should have done or he could have done an independent review, but he just didn't because he happened to agree with everything that was said in the state court case. But he recognizes that there is, in fact, an obligation on the part of the federal court to determine whether or not, under these circumstances, these permits are protected under the Fifth Amendment. With regard to the shore fisheries leases, the state acknowledges that it's a property interest. The only question now is whether or not these leases waive their right to just compensation. As I understand it, you have to show by clear and convincing evidence that someone waives, knowingly, involuntarily, the constitutional right. We argue that the right to be paid just compensation for private property taken for public use is a fundamental right. It was fundamental when it was added to our Constitution in the Bill of Rights. Do you disagree with the principle that the right to compensation can be waived, or are you just saying that it hasn't been in this instance? No, I'm not disagreeing that you can't waive your constitutional right. Certainly you can waive those if you do it knowingly, intelligently. You can do that. My argument is that one paragraph in that lease. Right. It says that this lease, and I'll leave out some words, but it says this lease does not limit the power of the state of Alaska, its political subdivisions, to enact and enforce legislation or to adopt and enforce regulations or ordinances affecting directly or indirectly dot, dot, dot, the value of the interest held under this lease. I don't have any argument that that language gives the government the power to regulate property. Many regulations come from statements like that. We're not saying that the government is limited from regulating. What we're saying is that they're limited from going too far in their regulations. So this language, if you were just an ordinary person reading this language, there is nothing in that language that would suggest to you that you are giving up an important constitutional right just because you get this lease because you acknowledge that the government can regulate the lease. And affect the value of your interest. Well, regulate it and affect the value, just like a zoning ordinance. I mean, local government can pass an ordinance that affects your use and value of your land. They do it all the time. You just acknowledge that. But that doesn't prevent a person who owns a piece of property to challenge the government's ordinance if the ordinance has gone too far. So all that is is just purely an acknowledgement of what the government's powers are in terms of regulating this lease. But it doesn't say that the government can go to the point of too far to regulate the lease, and therefore you have no right because you wait. It sounds like you agree that we can presume that the person who seeks one of these leases is presumed to have read these restrictions. I mean, I would presume that somebody read it. But it's this contract of adhesion, and therefore it has to be understood not as a business professional purpose person or not as somebody who's got a higher education, just by ordinary layman people. And ordinary layman people, I suggest, would not have read that language, if they read it, to be an intentional, involuntary, knowing relinquishment of this constitutional right. Counsel, if you're right, then how do you deal with just a very simple situation? Somebody who's given a driver's license is given a very, very valuable right in the state of Alaska. But it's not transferable. Yeah, but you can't deprive them of that without due process. That's Matthews v. Selbridge. I understand that. But any restrictions that's placed on speed limits would be a restriction on their valuable right. Why doesn't that just convert into a takings clause under your analogy? Every regulation enacted by the state under your analogy is going to infringe on somebody's rights. That converts everything into a takings clause. Because that particular license is not an economic asset that, in a sense, has any pecuniary value, nor is it transferable, nor can you make a claim against it in the private world to enforce a right against it. The driver's license is not like this license, not even close to this license. Not only is this license personal to the holder, it can also be transferred to somebody else for money. I don't know of any driver's license that can be transferred for money. In fact, this license can be inherited by somebody after you die. I don't know of any driver's license that can be inherited by anybody. Are you referring to the lease now or the permit? Well, he asked me about the driver's license question. Oh, but I'm talking about this case. All right. Are your comments now also applicable to the lease and the waiver problem we've discussed? Well, the waiver is a different question as to whether the lease is, in fact, properly protected under the Fifth Amendment. Both the state court and the district court agreed that it is, in fact, this lease in land. It is, in fact, a species of property that's protected by the takings clause. The question then becomes whether or not the people who held the lease because of this paragraph in the lease agreement waived the constitutional right to compensation. Counsel, I think we understand your position, and you are quite a bit over time, but we will restore a couple of minutes for rebuttal when the time comes. Okay. And we'll hear from the state now. I'll argue the third issue then. Thank you very much. Your Honors, my name is Lance Nelson. I'm an Assistant Attorney General with the State of Alaska. It's my honor to represent the Commissioner of the Department of Fish and Game and the State of Alaska's interest in this matter. If there ever was a case that justified the rule that says federal courts will look to state law to define the property interest in a takings case, this is it. This is the poster child of that rule. There are many good reasons to rely on state law in this case, and four basic ones. First, you have a definitive and comprehensive ruling on the issues of this case, as definitive as you will ever find, because the Vantag decision addressed exactly the same legal questions brought by exactly the same type of users, represented by exactly the same legal counsel, presented exactly the same legal arguments to the Alaska Supreme Court as you had before you here today. The Alaska Supreme Court answered all those questions in a comprehensive and definitive fashion, and you really need go no further to resolve this case. The second reason to rely on state law in this case is that the interests are all creatures of state statute. There are benefits carefully granted to certain fishermen in a way that will not offend the provisions of the state constitution. They don't exist anywhere but Alaska. Only state law concerns are at stake in this case. There's a... Are these licenses, leaving aside the leases for the moment, are they analogous to, say, a taxi medallion, which is permission to operate a taxi, but you can, with permission, sell the medallion or transfer it to others and that sort of thing? You know, I don't think so because we're talking about a situation where, in some aspects, of course, it is similar, but we're talking about a situation where with commercial fishing, before limited entry, before shore fishery leases, the only rights the commercial fisherman had when he obtained a license or participated in the fishery was an opportunity to catch whatever fish the Board of Fisheries provided by regulation for as a fishery. He had a right to participate in that, to take full advantage when the season was open, to use the gear that was allowed to participate. After limited entry and after a shore fishery lease is issued, those rights are exactly the same. They don't change at all. Still, as spelled out in statute and logically even, all the fisherman has is a right to participate in whatever fishery is provided under the regulations of the Board of Fisheries. The only difference, in the case of the limited entry permit, is now there are a limited number of individuals that that person will compete against in the fishery. But it's clear from the statutory language that that's... So in a sense, you're saying the value isn't in the license per se. The value stems from the limited number of the licenses. Because if everybody could fish under an individual license, there'd be more competitors. So when people transfer their permits, there's value there, and that value is determined in part by what are the expectations that that opportunity will provide for the purchaser. And we're getting a little bit now into whether there's probably going to takings occur or not. But nevertheless, the fundamental characteristics of the permit are that when someone buys one, they know by statute that it's going to be subject to whatever regulation passed by the Board of Fisheries, whatever opportunity is going to be there. They have some reason to look at the past and say, well, it's probably going to continue the same. But they're aware and they assume the risk when they purchase a permit that that could change. I want to ask you a question about the leased land issue and the question whether there's been a waiver. Would you agree that the question whether there has been a waiver, as distinct from the question whether property exists begin with, is a federal law question? That is, the waiver of a right to seek compensation for a taking of property would be a federal question. So we have, I guess I'm asking you whether you think we have de novo review of the question, the narrow question whether the lease agreements are a waiver. If there had been a property interest that contained a right to compensation in the first place. I'm talking about the leases. I agree. That's what I'm talking about. So there is a property interest in the lease. There is. Okay. So the question whether there's been a waiver of the right to seek compensation for a taking or an alleged taking of that property interest, is that a federal question or a state question? I think it's a state. First, primarily it's a state question. Why? Because once the state law governs whether there's a property right ordinarily, but the question whether it's been taken or whether someone has the right to seek compensation for an alleged taking would seem to be a federal question. If I may, assuming for the purposes of the discussion here, that there was a compensable property interest conveyed in the lease, then I think you're probably right. I think the question of a waiver, whether it's met constitutional requirements, federal constitutional requirements, would be a question that you could look at. What is it about the leases, the agreements, that constitutes a waiver? It's an acknowledgement that they were receiving a limited property interest. In my mind, it's not really a waiver. It's a question of because you can only waive something you received, I don't think they ever received a compensable property interest by virtue of the language of the lease, by virtue of the statute that says the lease of submerged land conveys no interest in the waters above the land or in the fish in the water. The reason those leases contain that limiting language is because it's statutorily required. That's what the Supreme Court found, that if that provision wasn't in there, those leases would constitute an exclusive right of fishery inconsistent with the state constitution. If the state canceled an entire season for the leases, is there any compensation available from the state for that? No, there's none, not unless the legislature decides to declare an emergency or something like that. I'll give you an example. During the Exxon oil spill, Exxon Valdez oil spill in 1989, seasons were canceled all over south-central Alaska because of the effects of that. While fishermen sought compensation and I think received it from Exxon, there was no compensation available from the state. Okay. The important thing about leases... What if we canceled fishing leases in a particular area of the state, not for anything having to do with the fish, but because the state wished to construct a harbor there, so they canceled all the leases in a particular area in order to construct a harbor or dredge something? Would that change things? Well, I think in that case, for example, if a city was doing it, there is a remedy under the lease that says you're entitled to, in that kind of situation, you're entitled to return any fees that you paid so you don't have to pay and not use the lease. But it's because of the lease's own provisions that you can get that, not because of any constitutional claim. As I understand your answer, that's what you're saying. It's under the lease or not at all. Right. And the lease has the effect of... We're talking about defining the property interest. I think the lease does that in itself and in light of the statute. The lease is a right to fish in perpetuity. Is that right? No. How often is that? It's, I think, a 10-year term that's renewable. A 10-year term. Okay. Let me go back to the harbor question. If you had just purchased one of these leases, how much would it cost you for a 10-year lease, if you were to start the lease? I'm not certain on the amount, but it's a certain amount per year that you pay an annual fee. I saw $300. I don't remember whether that was... It's in that range, yeah. Okay. So we're not talking about thousands of dollars or hundreds of thousands of dollars. No. We're not talking about market value, fair market value at all. It's not determined that way. It's just an administrative fee that's designed to cover the cost of the program. Okay. One of the reasons that you should follow the state court ruling in this case is that it was not arbitrary and capricious. As noted in the peanut quota holder share case, there's several important statements about property interests, including one that says the parameters of a protected property interest are delimited by the law that creates the interest. That's exactly what happened in this case. The state statutes that created both the lease and the permits delimited the property, the protected property interest. It also says to have a property interest and a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must instead have a legitimate claim of entitlement to it. As Alaska Supreme Court held, the fishermen in this case do not have a... a compensable property interest because of the very definitions that, by the statutes that created the interest, as well as the fact that those limitations are absolutely required. If we didn't have them, the Supreme Court, who's ruled several times on the constitutionality of the Limited Injury Act, would find these statutory scheme unconstitutional. We have to start from scratch with fishery management in the state of Alaska. The other statement in that Federal Circuit case says, specifically the Supreme Court has found that express statutory language can prevent the formation of a protectable property interest. And that's exactly what happened in this case. There's nothing arbitrary or capricious about the Bannock decision holding that the statutes defining and limiting injury permits to short fishery leases have real meaning and effect. This case isn't complicated. As the district court noted, the federal rule of jurisprudence is to look to state law to define property interest, and the Alaska Supreme Court has done that in a very definitive fashion. We respectfully request that the district court consider this case. All right, I think we have no more questions, so we'll restore two minutes for rebuttal. Neither the Supreme Court nor the federal district court offered any explanation for their conclusion that if a limited injury permit was treated as property for purposes of a takings clause, that that somehow would violate the Alaska Constitution. Many years ago, the Alaska Supreme Court looked at the nature of these permits and made a declaration that giving these permits to a select few to use for the rest of their lives, if they wish to, does not violate the common use clause of the Constitution nor the exclusive rights or special privileges of the Alaska Constitution. So for the Bannock court to just make a conclusion without an explanation, and for the district court to make a conclusion without an explanation as to how this fishery is going to become more exclusive in terms of entry into the fishery, which is what the Limited Injury Act and the Amendment to the Constitution of Alaska is about, how describing this as a piece of property is going to somehow make it more exclusive than it already is for people looking into the fishery? It won't. There's a limited number of permits transferred on the open market. It doesn't change the number. It's still limited. I can cook in at 700 and so for set netters, 1300 and so for drift gill netters. That's not going to change because you describe it as a piece of property, protected by the Fifth Amendment. Regarding the statute itself that seems to say that the legislature can revoke or modify the entry into a fishery, the use privilege, as they call it, without compensation is arbitrary when you consider all the other state statutes that were enacted after this statute that clearly did this permit economic asset interest with a pecuniary value, transferable, and claims could be made against them. Thank you, Counsel. Your time has expired. We appreciate very much the arguments of both counsel. They've been extremely helpful in this difficult case. The case is submitted.
judges: Alarcon, Graber, Bybee